## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

PAUL JONES,

               Plaintiff,

    v.

SAFR TECHNOLOGIES, INC., SYED GILANI,
CHIME FINANCIAL INC., and VINEET
MEHRA,

               Defendants.

Case No. 3:24-cv-13082
**Leave to File Granted on March 14, 2025**

## DEFENDANTS SAFR TECHNOLOGIES, INC. AND
## SYED GILANI'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

While the Plaintiff's Opposition is at times inconsistent, contradictory and hard to navigate, there are a few aspects of the Opposition that cannot be ignored.  To begin, the Plaintiff does not dispute that he is a serial plaintiff that has filed dozens of complaints in state and federal court, including numerous cases alleging violations of the Telephone Consumer Protection Act (TCPA).[1] Plaintiff also does not dispute that this Court may take judicial notice of the public and federally maintained National Provider Identifier (NPI) Registry, which clearly contains the subject phone number and associates it with a business, Commonwealth Community Recovery Division (CCRD) Inc.  Critically, Plaintiff does not dispute that he necessarily would have been required to provide the information on that directory to the federal government prior to it being posted.  Plaintiff seeks to sidestep this issue by arguing that there are additional phone numbers associated with the business, but that argument misses the point entirely.  There is no question that Plaintiff voluntarily

---

[1] It appears this Court is familiar with at least some of Mr. Jones' prior litigation.  While Mr. Jones spends much time in his opposition arguing that his extensive litigation history is irrelevant, the Defendants beg to differ.  It is relevant to the alleged harms he claims he has suffered, from four isolated texts mind you, but also because the normal accommodations that might be given to a *pro se* plaintiff with regard to pleading should not apply to Mr. Jones in light of his history.

provided his phone number to the NPI and associated that phone number with his business. Safr does not sell any consumer products. The only reason they would have ever texted the number is *because it was on the NPI Registry*. Plaintiff's argument that he can simultaneously provide a phone number to a federal directory for medical service providers and at the same time sue when a business seeks to contact the business through that number would turn the relevant statutes and regulations on their heads.

The *undisputed* listing of the phone number on the public NPI Directory immediately distinguishes this case from the cases cited by Plaintiff. For example, Plaintiff extensively cites *Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022) for the proposition that because he characterizes his phone number as "mixed-use" this somehow means that dismissal is not warranted. However, the *Chennette* court recognized that one of the most critical facts to be considered when assessing whether a phone number is commercial is whether "plaintiffs have held out to the public or advertised their phone numbers for business purposes." *Id.* at 1225 (collecting cases). Likewise, in *Mattson v. New Penn Fin., LLC*, 2020 WL 6270907 (D. Or. Oct. 25, 2020), there was no evidence that the Plaintiff had ever placed his phone number on any public database available to business-to-business providers, and certainly no database maintained by the federal government. The same is true in *Mantha v. Quotewizard.com, LLC*, 2012 WL 6061919, at *2 (D. Mass. Dec. 13, 2021) and *Blevins v. Premium Merchant Funding One, LLC*, 2018 WL 5303973, at *2 (S.D. Ohio Oct. 25, 2018). Critically, in those cases, the question centered around whether the subject phone number was *used* for both commercial and residential purposes, or whether there was some form of consent. The issue here is that it is undisputed that Plaintiff *publicly listed* the phone number associated with a business on a commercial business-to-business website, which is not the case in either *Mantha* or *Blevins*. To then argue that contacting that number in an effort to reach

315877137v.5

the *business* (not a consumer) somehow violates the TCPA finds no support factually or legally, and the cases cited by Plaintiff are inapposite.[2]

On the other hand, the court in *Bank v. Indep. Energy Grp.*, *LLC*, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014), a case also cited by Plaintiff, set forth the above analysis and distinction perfectly:

> Such businesses should be able to gather numbers from public directories or websites that list business telephone numbers (such as the Yellow Pages) under the assumption that such lines are not residential. A telephone subscriber who registers a line with the telephone company as a residential line but then lists the number in the Yellow Pages and other directories as a business line sacrifices the protections afforded by the TCPA.

*See also Chennette v. Porch.com, Inc.*, 2020 WL 9078129, at *3 (D. Idaho Nov. 2, 2020) ("The fact that Plaintiffs did not directly provide their contact information to Defendants does not impact this Court's finding that the numbers at issue, which were held out as business numbers on numerous online business directory websites, are business numbers."); *Katz v. Liberty Power Corp.*, 2019 WL 957129, at *3 (D. Mass. Feb. 27, 2019) ("While a telephone subscriber can have a telephone number registered as 'residential' with the telephone company, if the subscriber holds out such telephone number to the general public as a business line, the line should not be considered 'residential' for the purposes of the TCPA – even if it is registered as 'residential' with the telephone company.") (quoting *Bank v. Indep. Energy Grp.*, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015)).

Separate and apart from the fact that it is undisputed that Plaintiff's phone number is listed on a federally maintained public business-to-business website, he also has no answer to the nature and content of the texts themselves. To begin, the entire universe of what we are discussing in this case is *four texts*. That's it. Moreover, the four texts are set forth in the Complaint. Much like the

---

[2] It is also worth noting that while Plaintiff is adamant in his Complaint that he only used the subject phone number "exclusively" for his personal purposes, he now concedes in his Opposition that he "occasionally" uses the number for business purposes. *Compare* Complaint, ¶ 13 *with* Opposition Br. at 9.

judicial notice of the NPI Directory, these texts may be considered in connection with the motion to dismiss.  Critically, the TCPA requires that, in order to fall within the statutory definition of "telemarketing," the communications must constitute consumer solicitations, seeking to encourage a consumer to purchase a good or service for money.  *See, e.g., Hulce v. Zipongo, Inc.*, 723 F.Supp.3d 669, 673 (E.D. Wisc. 2024) (concluding that because the purpose of the communications was not to encourage the purchase of any services, but instead was simply to encourage the use of free services, the communication was not covered by the TCPA).

Here, the face of the texts themselves completely belies any argument that they were intended to encourage a consumer to purchase any goods or services.  For example, the text on October 16, 2024 at 9:11 a.m. specifically references "transportation providers" and as we noted in our opening brief, Plaintiff even alleges that this was a business communication.  *See* Comp. at ¶ 5. The other three communications also are clearly not encouraging the purchase of any service, but provide a link to a survey regarding "NEMT software."   NEMT software is Non-Emergency Medical Transportation software, which Safr provides for free to commercial medical transportation companies to automate and streamline the scheduling and dispatching processes.[3]  The texts on their face are not selling anything, and certainly not a consumer product or service.   As such, it is clear that the texts fall well outside of the scope of the TCPA.  *See Edwards v. Signify Health, Inc.*, 2023 WL 3467558, at *3 (D. Nev. May 12, 2023) ("Put simply, Edwards fails to state a plausible claim because the defendants' phone calls offered him a free healthcare service and thus were not made for the purpose of telemarketing or soliciting the purchase, rental of, or investment in property,

---

[3] It is entirely unclear where the information that would support the allegations in Paragraph 22 of the Complaint came from, as there is no citation to any document or other information.  Nonetheless, even those unsupported allegations confirm that Safr is not a consumer business.  Complaint ¶ 22 (stating that Safr's "tools … would give me understanding of my financial health of *my business* in real time.")  Even in the Opposition Brief, Plaintiff again reaffirmed that his allegation is that Defendants sought to sell their "business technology services."  Opposition Br. at 19.

315877137v.5

goods or services."); *Horton v. Tarrant Cnty. Hosp. Dist.*, 2022 WL 702536, at *2 (N.D. Tex. Feb. 4, 2022) (informational text cannot support a TCPA claim); *Trujillo v. Free Energy Sav. Co., LLC*, 2020 WL 7768722, at *2 (C.D. Cal. Dec. 21, 2020) ("a general economic incentive does not equate to, or give rise to a reasonable inference of, a specific purpose to encourage the purchase, rental, or investment in property, goods or services"); *Schulz v. Infogroup, Inc.*, 2020 WL 4201636, at *3 (N.D. Tex. July 21, 2020) (rejecting argument that calls were telemarketing under the TCPA); *Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013) (text messages sent to Plaintiff were not "telephone solicitations").

While the above arguments are dispositive of all of Plaintiff's claims, the Plaintiff also fails to address the inherent inconsistency in his Complaint, and now his Opposition, as to certain aspects of his Complaint and legal arguments. For example, Plaintiff continues to argue that Defendants are somehow required to register as telemarketers with the Commonwealth, but utterly fails to plead any facts that would demonstrate that the Defendants sell any consumer products or call consumers regarding the purchase of consumer products or services. This pleading failure also mandates dismissal of the allegations regarding 16 C.F.R. § 310.5(a)(8), which also only applies to entities that qualify as "telemarketers" under the statutes and regulations. It is incumbent upon Plaintiff to plead the requisite facts to support his causes of action and he has failed to do so. For example, in his registration count, while he identifies Safr in the title, he fails to include any specific allegation regarding Safr in the body of his Complaint. Likewise, in his paragraphs regarding "Article III Standing" he does not mention the Safr Defendants at all. While we understand that *pro se* plaintiffs are given some leeway in pleading, these inconsistencies and deficiencies should not be overlooked.

Likewise inconsistent are Plaintiff's arguments regarding his 93A claim. Out of nowhere, Plaintiff now argues that the Safr Defendants do not have an office or assets in Massachusetts,

which he claims excuses him from the Chapter 93A demand letter requirement. Opposition Br. at 14 ("In this case, Defendants does [sic] not have an office or assets in Massachusetts, making a demand letter unnecessary.") However, in his Complaint, the Plaintiff alleges that "Safr has an office and principal place of business at 1946 Washington Street, Unit 35, Auburndale, MA 02466." Complaint ¶ 8. While he does not allege any address for him, Mr. Gilani is a resident of Massachusetts as well. These sorts of inconsistencies are not simply excusable errors. They require dismissal of the Complaint.

Moreover, Plaintiff's arguments regarding his failure to send the required Chapter 93A demand are nonsensical and not supported by the cases he cites. *See* Opposition Br. at 41-42. For example, in *York v. Sullivan*, 369 Mass. 157, 162 (1975), the Supreme Judicial Court confirmed the requirement of a pre-suit demand letter and in no way held that such a demand was excused "when the defendant lacks a reasonable opportunity to settle the claim." Opposition Br. at 15.[4] Likewise, in *Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500 (2011), the Court in no way held that a demand letter was somehow excused when a claim arises under the TCPA or another statute. *Id.* at 505 (confirming the demand letter requirement and further holding that the letter must articulate the claims with some specificity). The issue in *Casavant* was whether the *contents* of the demand letter were sufficient to provide the requisite notice, not whether the requirement to send a demand letter was excused entirely. *Id.* at 506 ("Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief.") (quoting *Clegg v. Butler*, 424 Mass. 413, 423 (1997)).

Sending a written demand letter is a "condition precedent to commencing an action under G.L. c. 93A, § 9." *Spilios v. Cohen*, 38 Mass.App.Ct. 338, 342 (1995). It is well settled that Plaintiff

---

[4] Likewise, the argument that somehow Defendants had "notice" of the conduct and an "opportunity" to rectify it in no way obviates the requirement of a specific pre-suit demand. Opposition Br. at 15.

has the burden to prove "the timely sending of a letter complying with the statutory specifications." *See Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 813 (1975) ("A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved"); *York*, 369 Mass. at 163 (under c. 93A, § 9, "a written demand for relief, is a prerequisite to suit, to be alleged and proved"); *Kanamaru v. Holyoke Mut. Ins. Co.*, 72 Mass.App.Ct. 396, 407–408 (2008) (c. 93A, § 9, "requires a plaintiff to make a written demand letter asking for reasonable relief thirty days prior to filing a lawsuit.... Not only must such a letter be sent, a plaintiff must plead that he has complied with this requirement as a prerequisite to suit"). Plaintiff's argument that the requirement of a demand should be excused should be rejected and the Chapter 93A claim dismissed.

Finally, Plaintiff's assertion that he need only proved bare-bones allegations regarding the use of an automatic dialing system, without more, has been rejected by numerous courts and ignores Supreme Court precedent that post-dates the authority he cites. *See Jones v. FMA Alliance Ltd.*, 978 F.Supp.2d 84, 87 (D. Mass. 2013) ("Simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim.") (citing *Ibey v. Taco Bell Corp.*, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012)); *Thorington v. Pro Custom Solar, LLC*, 2021 WL 7286283, at *3 (D. Conn. Nov. 23, 2021) ("The Plaintiff's complaint fails to allege that Solar's technology has the capability of 'storing' or 'producing' phone numbers "using a random or sequential number generator," as set forth in the statutory definition of an ATDS, 47 U.S.C. § 227(a)(1)."). As made clear in the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 592 U.S. 395, 398-402 (2021), to qualify as ATDS technology, the equipment in question must have the capacity either to store a telephone number using a random or sequential number generator or to produce a telephone number using a random or sequential number generator. A failure to plead these facts is fatal to a claim

alleging the use of an ATDS.  *See Ortega v. Sienna Mktg. & Consulting, Inc.*, 2025 WL 899970, at *4 (W.D. Tex. March 4, 2025) ("Mr. Ortega does not plead sufficient facts from which the court may infer Defendant used an ATDS as defined in *Duguid*."); *Thorington*, 2021 WL 7286283, at *3 (simply alleging that the number was called without human intervention is not sufficient to meet the pleading requirement).

   As the court in *Ortega v. DiTommasso, Inc.*, 2025 WL 440278, at *3-4 (N.D. Tex. Feb. 6, 2025) clarified, "since *Duguid*, [circuit] courts have emphasized the need to plausibly allege the use of an ATDS by focusing on facts that could show the defendant's device used a random or sequential number generator to produce or store phone numbers (as opposed to another method)."  *See Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. Nov. 16, 2022) ("We hold that an [ATDS] must generate and dial random or sequential *telephone* numbers under the TCPA's plain text); *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 101 F.4th 176 (2d. Cir. 2024); *Perrong v. Montgomery Cnty. Democratic Comm.*, No. 23-2415, 2024 WL 1651274 (3d Cir. Apr. 17, 2024) (exposing defendants to liability for list-mode calls not warranted because such calls do not concern the risks identified by Congress) (citing *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022)); *cf. Murray v. Grocery Delivery E-Services USA, Inc.*, 55 F.4th 340, 349 (1st Cir. 2022) (noting that claims relating to the use of an auto-dialer were "incompatible" with *Duguid*).  Plaintiff's complete failure to plead the allegations required by *Duguid* is fatal to his ATDS claims.

**CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court grant the motion and dismiss Plaintiff's claims.

DATED: March 28, 2025                Respectfully submitted,

                                      SAFR TECHNOLOGIES, INC. and SYED GILANI,

                                      By their attorneys:

                                       /s/ Christopher F. Robertson
                                      Christopher F. Robertson (BBO No. 642094)
                                      crobertson@seyfarth.com
                                      Seyfarth Shaw LLP
                                      Seaport East
                                      Two Seaport Lane, Suite 1200
                                      Boston, Massachusetts 02210
                                      Telephone:     (617) 946-4800
                                      Facsimile:     (617) 946-4801

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2025, a copy of the foregoing document was filed electronically through the Court's ECF system.  Electronic copies were served on the plaintiff, who is pro se:

Paul Jones
79 Thompson Street
Springfield, MA 01109
(413) 302-6079
PJ22765@gmail.com

Pro Se

                                      /s/ Christopher F. Robertson
                                      Christopher F. Robertson

315877137v.5